UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK EDDINGTON,

*Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant*.

No. 19-cv-2081-JMC-MAU

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Patrick Eddington's Motion for Attorneys' Fees and Costs ("Motion"). ECF Nos. 50; 52. Defendant, the United States Department of Justice ("DOJ"), opposes the Motion. ECF No. 51. Because Eddington fails to show he is eligible for attorneys' fees, the Court recommends that Eddington's Motion be **DENIED**.

## FACTUAL BACKGROUND

Eddington is a Senior Fellow at the Cato Institute, which he refers to as "a leading think tank dedicated to promoting individual liberty." Decl. of Patrick G. Eddington, ECF No. 50-1 ¶¶ 3–4. Eddington's research and publications focus on domestic surveillance and political repression. *Id.* ¶ 5.

On May 15, 2019, Eddington filed a FOIA request with the National Security Division ("NSD") of the DOJ. *Id.* ¶ 6. Eddington sought records from June 3, 2015, to May 15, 2019, concerning the Uniting and Strengthening America by Fulfilling Rights and Ensuring Effective Discipline Over Monitoring Act of 2015 ("USA FREEDOM"). *Id.* at 4–5.[1]  According to

---

[1] Citations throughout this Report and Recommendation are to the page numbers in a filing's ECF header.

1

Eddington, the Act placed conditions on the Government's collection of citizens' telecommunications metadata. *Id.* ¶ 7. Eddington's FOIA request had two parts: "1) internal or external reports on the efficacy of programs carried out under [USA FREEDOM], including solicited or unsolicited feedback from agents or intelligence analysts, whether formal or informal in nature; and 2) any correspondence dealing with the termination or initiation of programs conducted under [USA FREEDOM]." *Id.* at 4.

On June 17, 2019, the DOJ acknowledged receipt of Eddington's FOIA request. *Id.* at ¶ 10, 6. The DOJ informed Eddington that it processed requests "on a first-in, first-out basis." *Id.* at 6. The DOJ also noted that the processing time for Eddington's request would depend on the complexity of the request, whether the request involved sensitive information or many records, and whether the DOJ needed to consult with other agencies to process the request. *Id.*

## PROCEDURAL HISTORY

Eddington filed suit less than a month later, on July 12, 2019. ECF No. 1. In the Complaint, he requested that the DOJ conduct a reasonable search and produce all non-exempt requested records. *Id.* at 2–3. The DOJ answered the Complaint on August 27, 2019. ECF No. 6.

On September 9, 2019, the Parties filed their first joint status report ("JSR"), in which the DOJ stated it was "in the process of conducting its searches" for responsive records. ECF No. 11 ¶ 2. The DOJ noted it had to seek those records from individual custodians, as there was no centralized database. *Id.* The DOJ anticipated completing its search by October 31, 2019. *Id.* On that date, the DOJ informed the Court that it had completed its search for part one of Eddington's FOIA request and found no responsive records. ECF No. 12 ¶ 2. The Parties also discussed narrowing part two of Eddington's FOIA request to exclude internal communications. ECF Nos.

2

12 ¶ 2; 13 ¶ 2. The DOJ claimed that including those communications in its search would cause a delay in any document production. ECF Nos. 13 ¶ 2; 14 ¶ 2. The Parties, however, did not reach an agreement on narrowing part two of the request. ECF Nos. 13 ¶ 3; 14 ¶ 3.

In January 2020, the DOJ informed the Court that it estimated completing its search for part two of Eddington's FOIA request by March 3, 2020. ECF No. 14 ¶ 4. On that date, the DOJ told Eddington that it had completed its search and was reviewing results. ECF Nos. 51–1; 17 ¶ 4. The DOJ stated it would provide Eddington with another response by May 3, 2020. ECF No. 51–1. On March 17, 2020, however, the agency informed the Court that the Covid-19 pandemic would impact its ability to timely process records and issue a response. ECF No. 17 ¶ 5.

On May 13, 2020, the DOJ informed the Court that it could not provide another response or production schedule because the DOJ's telework policies prevented access to a classified server on which the responsive records were kept. ECF No. 19 ¶ 4. These access restrictions continued until April 2022. *See* ECF Nos. 20 ¶ 4; 38 ¶ 3.

On July 18, 2022, the DOJ stated it had recently resumed processing Eddington's FOIA request and had located approximately 600 potentially-responsive pages. ECF No. 38 ¶ 4. The DOJ's processing involved coordination with other government agencies, including the Federal Bureau of Investigation ("FBI"). ECF Nos. 38 ¶ 5; 50-1 ¶ 11; 51-3. On December 16, 2022, the FBI produced a redacted and previously-sealed declaration that the Government had filed in the Foreign Intelligence Surveillance Court. ECF Nos. 50-1 at 7–24; 51-3.

On January 11, 2023, the DOJ issued its final response to part two of Eddington's FOIA request. ECF Nos. 41 ¶ 5; 51-2. The DOJ informed Eddington that it had located seventy-two pages of responsive records, all of which the DOJ withheld pursuant to various FOIA exemptions. ECF No. 51-2. Eddington did not challenge any of the agency's withholdings or redactions. ECF

No. 50-1 ¶ 14. On March 29, 2024, Eddington filed this Motion for an award of $18,980.15 in attorneys' fees and costs. ECF Nos. 50; 52.

## ANALYSIS

Pursuant to FOIA's fee recovery provision, a court may assess reasonable attorneys' fees and litigation costs against the United States in a case "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The objectives of this provision are twofold: 1) to encourage FOIA litigation that benefits the public interest when private interest is lacking; and 2) to compensate plaintiffs for enduring an agency's unreasonable stonewalling in complying with FOIA's requirements. *See Kwoka v. Internal Revenue Serv.*, 989 F.3d 1058, 1063 (D.C. Cir. 2021). Even if the Court deems the plaintiff a prevailing party under the FOIA statute, a fee award is not automatic. *See Morley v. Cent. Intel. Agency*, 894 F.3d 389, 391 (D.C. Cir. 2018) (per curiam) (noting that FOIA states that the Court "may" award fees to a prevailing plaintiff, not that the Court "must" or "shall"). The Court retains broad discretion in deciding whether to award fees. *See Hall & Assocs. v. U.S. Env't Prot. Agency*, 210 F. Supp. 3d 13, 19 (D.D.C. 2016) (citations omitted), *aff'd per curiam*, No. 16-5315, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018) (unpublished).

To recover reasonable attorneys' fees under FOIA, a plaintiff must be both eligible for and entitled to fees. *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 811 F.3d 22, 28 (D.C. Cir. 2016). If a plaintiff is eligible and entitled, they may recover a fee award that is reasonable. *Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 310 (D.D.C. 2020) (citations omitted).

**I.    Eddington Is Not Eligible to Recover Attorneys' Fees Because He Has Failed to Establish That He Substantially Prevailed in This Lawsuit.**

**A.    Legal Standard**

One of the ways a plaintiff can show they substantially prevailed in the litigation is by establishing that they obtained relief through "a voluntary or unilateral change in position by the agency, if the [plaintiff's] claim [was] not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). This is referred to as the "catalyst theory." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam).

Under the catalyst theory, the plaintiff must show that it is more probable than not that, but for the plaintiff filing suit, the agency would not have performed the desired act, such as producing records. *Id.* at 97 (citations omitted); *see Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981) (noting this is a question of causation). Courts look at the totality of the circumstances to determine whether there is a causal nexus between a plaintiff filing suit and an agency's change in position. *See Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202 (D.D.C. 2016) (citation omitted). If factors unrelated to the lawsuit trigger an agency's disclosure, the plaintiff has not demonstrated causation and is not a prevailing party under the catalyst theory. *Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 389 (D.D.C. 2018), *aff'd sub nom. Grand Canyon Tr.*, 947 F.3d 94.

Although timing may be relevant in this analysis, a plaintiff's filing of a complaint and an agency's subsequent disclosure is not enough to show causation. *See Grand Canyon Tr.*, 947 F.3d at 97; *see also Pub. L. Educ. Inst. v. U.S. Dep't of Just.*, 744 F.2d 181, 183 (D.C. Cir. 1984) (stating something "more than *post hoc, ergo propter hoc* must be shown"). There must be "hard evidence" beyond timing that the plaintiff's lawsuit caused the agency to release documents or provide other requested relief. *Conservation Force*, 160 F. Supp. 3d at 206. Accordingly, the Court may

5

consider whether the agency had a reasonable amount of time to respond to a FOIA request before the plaintiff filed suit. *See First Look Inst. Inc. v. U.S. Agency for Glob. Media*, No. 20-cv-3499, 2024 WL 3744818, at *4 (D.D.C. Aug. 9, 2024) (collecting cases), *report and recommendation adopted sub nom. First Look Media Works, Inc. v. U.S. Agency for Glob. Media*, 2024 WL 4262773 (D.D.C. Sept. 23, 2024), *aff'd sub nom. per curiam*, *First Look Inst., Inc. v. U.S. Agency for Glob. Media*, No. 24-5257, 2025 WL 1840647 (D.C. Cir. July 2, 2025) (unpublished). The Court also considers whether unavoidable external factors caused an agency's delay, including inadvertent administrative constraints. *See Env't Integrity Project v. United States Env't Prot. Agency*, 316 F. Supp. 3d 320, 328 (D.D.C. 2018).

### B.     Parties' Arguments

Eddington makes a half-hearted argument that he is eligible for fees under the catalyst theory.[2] ECF Nos. 50 at 5–6; 52 at 2–5. His only meaningful argument is that the lawsuit caused a "sudden acceleration" of the DOJ's production. ECF No. 50 at 4. Under that theory, Eddington points to two pieces of alleged "hard evidence." *Id.* at 5-6. He asserts that the DOJ "immediately began processing" his request once he filed suit because the DOJ stated in the Parties' first JSR that the agency was in the process of conducting searches. ECF Nos. 1; 50 at 5; *see also* ECF No. 11 ¶ 2. Relying on the DOJ's 2019 FOIA Report,[3] Eddington contrasts the nearly four-month period between his May 15, 2019 FOIA request and the Parties' first JSR, with the DOJ's average

---

[2]     Indeed, he devoted only two paragraphs in his opening Motion to this argument.
[3]     Each fiscal year, agencies must publicly report certain statistical information concerning their FOIA processes to the Attorney General and the Director of the Office of Government Information Services. *See* 5 U.S.C. § 552(e). Courts in this District have relied on these reports in FOIA cases. *See, e.g.*, *Nat'l Sec. Couns. v. C.I.A.*, 898 F. Supp. 2d 233, 259 n.14 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020).

processing time in the NSD of over one year for "complex" FOIA requests.[4]  ECF No. 50 at 5–6. Eddington claims that the disparity between the average processing time and the time it took for the DOJ to *start processing* his FOIA request shows that it is "likely" that the DOJ would not have processed his request as soon as it did absent this lawsuit.  ECF Nos. 50 at 5–6; 52 at 2–5. Eddington also asserts that the DOJ failed to provide evidence of its pre-suit processing steps. ECF No. 52 at 4–5.

The DOJ argues that Eddington fails to provide any "evidence that this suit caused [the DOJ] to change what it already was doing with respect to the FOIA request."  ECF No. 51 at 8. The DOJ first argues that it is not the case that the agency failed to communicate with Eddington prior to his lawsuit because the agency let him know it was processing the request.  *Id.* at 7.  The DOJ sent a letter on June 17, 2019, informing Eddington that it would process his request as quickly as possible consistent with the agency's "first-in, first-out" policy and the administrative demands of the request.  *Id.* at 7, 10–11; *see also* ECF No. 50-1 at 6.  Second, the DOJ argues that the DOJ's 2019 FOIA Report does not provide any conclusive evidence of a "sudden acceleration" in this case.  ECF No. 51 at 11–12.  Among other things, the agency points out that the Report simply provides averages from one fiscal year, which necessarily means that there were requests that were processed in less time than the average.  *Id.* at 11.  The agency also points out that the Report fails to account for other "unforeseen contingent events that may operate to quicken or slow down the processing of a FOIA request."  *Id.*  The DOJ also notes that Eddington's argument hinges entirely on FOIA statistics from 2019 despite the DOJ not completing processing in this case until January 2023.  *Id.* at 12.

---

[4]  *See* U.S. Dep't of Just., *United States Department of Justice Annual Freedom of Information Act Report: Fiscal Year 2019* 34 (2019) ("2019 FOIA Report"), https://www.justice.gov/oip/page/file/1253751/dl?inline=.

7

### C. Discussion

Eddington has failed to establish that it is more probable than not that his lawsuit caused the DOJ to change its pre-suit position on his FOIA request. Eddington asks the Court to find that he has substantially prevailed in this lawsuit based solely on the proposition that the NSD's average time in 2019 for *fully* processing a complex FOIA request was greater than the time it took for the agency to *start* processing Eddington's request. ECF Nos. 50 at 5–6; 52 at 2–5. Eddington has failed to show that this alleged disparity establishes the DOJ "suddenly accelerated" processing because Eddington filed suit. ECF No. 50 at 4.

Courts in this District have concluded that an agency's "sudden acceleration" in processing a FOIA request after a plaintiff files suit may show that the lawsuit caused the agency to change its position. *Terris, Pravlik & Millian, LLP v. Cents. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011) (citing *Crooker v. U.S. Dep't of the Treasury*, 663 F.2d 140 (D.C. Cir. 1980)). This necessarily means that a plaintiff must first show that the agency initially took an adverse position on the FOIA request or engaged in an unexplained delay before the plaintiff filed suit. *See First Look Media Works, Inc.*, 2024 WL 4262773, at *4. A plaintiff must then prove that "the agency did in fact accelerate its response to the FOIA request because of the lawsuit." *Id.* (citations omitted). Eddington does not make either showing.

Eddington fails to show that the DOJ initially took an adverse position on his FOIA request or engaged in a significant and unexplained pre-suit delay. *See Am. Wild Horse Campaign v. U.S. Bureau of Land Mgmt.*, No. 22-cv-3061, 2024 WL 3967256, at *3 (D.D.C. Aug. 26, 2024) (noting that an agency's significant delay can support an inference that the agency forgot about or ignored the request). Although the DOJ does not provide a declaration explaining its pre-suit processing, Eddington's own evidence shows that the agency was aware of his FOIA request. ECF No. 50-1

at 6. The agency sent Eddington a response within thirty-three days of his FOIA request. *Id.* ¶ 10. In that pre-suit letter, the agency informed Eddington that it would process his request as quickly as possible in line with the DOJ's "first-in, first-out" policy and other administrative demands. *Id.* at 6; *see Grand Canyon Tr.*, 311 F. Supp. 3d at 390 (holding that plaintiff was not eligible for fees despite the agency's failure to produce a declaration). Accordingly, this is not a case in which the agency ignored the FOIA request, took an adverse pre-suit position, or delayed significantly in getting back to Eddington.

Moreover, Eddington filed suit only fifty-eight days after making his FOIA request and only twenty-five days after the agency first responded to him. ECF No. 50-1 at ¶ 10. This further undermines the argument that there was some supposed pre-suit delay. *First Look Media Works, Inc.*, 2024 WL 4262773, at *5; *Am. Wild Horse Campaign*, 2024 WL 3967256, at *1, *3 (finding the plaintiff was not eligible for fees despite the agency failing to communicate pre-suit with the plaintiff for eight months after confirming receipt). Eddington cannot manufacture a "sudden acceleration" simply by rushing to file suit and then claiming that the lawsuit caused the DOJ to subsequently process and release documents. The timing of Eddington's lawsuit means that the agency would in any circumstance be producing documents *after* the suit was filed. *Gov't Accountability & Oversight v. Sec. & Exch. Comm'n*, No. 23-cv-3268, 2024 WL 4828107, at *5 (D.D.C. Nov. 19, 2024). Eddington has failed to show that the DOJ was doing anything but proceeding business as usual on his FOIA request before he filed suit. *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Justice*, 750 F.2d 117, 120 (D.C. Cir. 1984) ("Absent any evidence on the matter, the natural inference is that the [defendant] was simply responding to the [plaintiff's] request.").

Eddington also fails to show that the DOJ suddenly accelerated processing his FOIA request because of his lawsuit. In determining whether an agency would have taken longer to produce responsive records absent a lawsuit, the Court may compare the agency's processing time for a specific FOIA request against the agency's average processing time for similar requests. *See, e.g.*, *Gov't Accountability & Oversight*, 2024 WL 4828107, at *4. Eddington errs, however, in attempting to make an apples-to-apples comparison between his case and the average processing time for 2019 "complex" FOIA requests. First, Eddington merely assumes without any support that his case qualifies as "complex" as the agency defined that term for inclusion of cases in the 2019 report.[5] *See* 2019 FOIA Report at 34 (recording that the NSD had an average processing time of approximately 110 days for simple FOIA request versus an average of approximately 418 days for complex FOIA requests). Second, Eddington does not account for the fact that, even if his case did qualify as "complex," the report still presents only an average number, necessarily meaning that there were complex cases which were processed faster than the average.

Third, the DOJ's 2019 FOIA Report captures the average time the DOJ took to *complete* processing for a FOIA request, not the time it took to *initiate* processing. *See id.* at 5 (defining a processed FOIA request as "a request . . . for which an agency has taken final action in all respects"). As Eddington acknowledges, the DOJ did not complete processing for his FOIA request until January 11, 2023, because of the Covid-19 pandemic. ECF Nos. 41; 50 at 5 n.2; 51-2. The DOJ, therefore, took approximately 1,337 days to process Eddington's FOIA request. Eddington does not offer any explanation to account for the fact that this 1,377-day processing time was actually longer than the 418-day average upon which he relies. Finally, Eddington does

---

[5] In the 2019 FOIA Report, the DOJ defines a complex request as "a FOIA request that an agency using multi-track processing places in a slower track based on the high volume and/or complexity of the records requested." *See* 2019 FOIA Report at 5.

not provide any evidence that, absent the Covid-19 pandemic, the DOJ would have completed processing his request much faster than this 418-day average. *See Harrington v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-2671, 2022 WL 17555428, at *5 (D.D.C. Dec. 9, 2022) (concluding the plaintiff was ineligible for fees despite the agency completing processing "a few months faster" than the agency's estimated completion date).

In sum, Eddington has not shown that the DOJ initially engaged in an unexplained delay before he filed suit or that his lawsuit caused the DOJ to suddenly accelerate processing for his FOIA request. Eddington does not provide hard evidence that he substantially prevailed in this litigation beyond the fact that the DOJ processed his FOIA request and produced documents after he filed suit. *Conservation Force*, 160 F. Supp. 3d at 206. Accordingly, Eddington is not eligible for attorneys' fees. *Grand Canyon Tr.*, 947 F.3d at 97 (citations omitted). Because Eddington has failed to show that he is eligible for fees, the Court need not consider whether he is entitled to fees or if his requested award is reasonable.

## CONCLUSION

For the foregoing reasons, the Court recommends Eddington's Motion be **DENIED**.

Date: July 23, 2025

                                                                                         MOXILA A. UPADHYAYA
                                          UNITED STATES MAGISTRATE JUDGE

**Local Civil Rule 72.3(b) Notice**

The Parties are advised that under the provisions of Local Rule 72.3(b), any Party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within fourteen days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

\* \* \*